**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID SPICER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. _____ |
| ) | |
| ARC LOGISTICS PARTNERS LP, VINCENT ) | COMPLAINT FOR |
| T. CUBBAGE, JOHN PUGH, EDWARD P. ) | VIOLATION OF FEDERAL |
| RUSSELL, ERIC J. SCHEYER, SIDNEY L. ) | SECURITIES LAWS |
| TASSIN, GARY G. WHITE, and BARRY L. ) | |
| ZUBROW, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

Plaintiff David Spicer ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.  Plaintiff brings this action in his capacity as a public common unitholder of Arc Logistics Partners LP ("MLP" or the "Company") against the members of MLP's Board of Directors collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a), Rule 14a-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC"), and Section 20(a). Specifically, Defendants solicit the vote of common unitholders of MLP in connection with the sale of the Company to Zenith Energy U.S. L.P. ("Parent"), Zenith Energy U.S. GP, LLC ("Parent GP"), Zenith Energy U.S. Logistics Holdings, LLC ("Holdings"), Zenith Energy U.S. Logistics, LLC ("Merger Sub" and together with Parent, Parent GP, and Holdings, the "Parent Entities"), Arc Logistics GP LLC ("MLP GP"), Lightfoot Capital Partners, LP ("LCP LP") and Lightfoot Capital Partners GP LLC ("LCP GP" and, together with LCP LP, the "Lightfoot Entities") through a preliminary proxy statement that

omits material facts necessary to make the statements therein not false or misleading. Unitholders need this material information to decide whether to tender their shares or pursue their appraisal rights.

2.  On August 29, 2017, the Company, Parent Entities, and the Lightfoot Entities announced that they had entered into a definitive agreement ("Merger Agreement") under which Parent Entities and Lightfoot Entities will acquire all of the outstanding common units of MLP in an all-cash transaction (the "Proposed Transaction"). If consummated, unitholders will receive $16.50 in cash for per common unit of MLP. The Proposed Transaction has an enterprise value of approximately $3.0 billion

3.  On September 26, 2017, Defendants issued materially incomplete and misleading disclosures in the Schedule 14A Preliminary Proxy Statement (the "Proxy") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Proxy is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4.  Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331–32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6.  The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional

purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of MLP common units.

9. MLP is a Delaware limited partnership formed to own, operate, develop and acquire a diversified portfolio of complementary energy logistics assets. The Company maintains its principal executive offices at 725 Fifth Avenue, 19th Floor, New York, New York, 10022. MLP common units trade on the New York Stock Exchange under the ticker symbol "ARCX."

10. Defendant Vincent T. Cubbage ("Cubbage") has served as Chief Executive Officer, Chairman, and a director of the Company's general partner since September 2013.

11. Defendant John Pugh ("Pugh") has served as a director of the Company's general partner since April 2017.

12. Defendant Edward P. Russell ("Russell") has served as a director of the Company's general partner since November 2013.

13. Defendant Eric J. Scheyer ("Scheyer") has served as a director of the Company's general partner since October 2013.

14. Defendant Sidney L. Tassin ("Tassin") has served as a director of the Company's general partner since November 2013.

15. Defendant Gary G. White ("White") has served as a director of the Company's general partner since October 2014.

16. Defendant Barry L. Zubrow ("Zubrow") has served as a director of the Company's general partner since December 2013.

17. Defendants Cubbage, Pugh, Russell, Scheyer, Tassin, White, and Zubrow are collectively referred to as Individual Defendants and/or the Board.

18. Non-party Parent, is a liquids and bulk terminaling company affiliated with companies that own and operate over 15 million barrels of crude oil and petroleum products storage in Amsterdam, Ireland and Colombia.

19. Parent GP, a Delaware limited liability company, is the general partner of Parent and is solely responsible for conducting Parent's business and managing its operations.

20. Holdings, a Delaware Limited Liability Company and a subsidiary of Parent, was formed by Parent solely for the purpose of effecting the Merger.

21. Merger Sub, was formed by Parent solely for the purposes of effecting the Merger.

22. Non-party LCP, LP, a Delaware limited partnership, is a private investment vehicle that focuses on investing directly in master limited partnership-qualifying businesses and assets.

23. Non-Party LCP GP, is the general partner of LCP LP and is solely responsible for conducting LCP LP's business and managing its operations.

24. The Lightfoot Entities' investors (collectively, the "Lightfoot Investors") include affiliates of, and funds under management by, GE Energy Financial Services ("GE EFS"), Atlas Energy Group, BlackRock Investment Management, LLC, Magnetar Financial LLC ("Magnetar Financial"), CorEnergy Infrastructure Trust, Inc. and Triangle Peak Partners Private Equity, LP. The Lightfoot Entities have a significant interest in MLP through LCP LP's ownership of a 26.8%

4

limited partner interest in MLP and LCP GP's ownership of 100% of MLP GP, which owns all of MLP's incentive distribution rights.

## FURTHER SUBSTANTIVE ALLEGATIONS

25. On August 29, 2017, MLP issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

> NEW YORK, Aug. 29, 2017 (GLOBE NEWSWIRE) -- Arc Logistics Partners LP (NYSE:ARCX) ("Arc Logistics" or the "Partnership"), Lightfoot Capital Partners GP LLC ("LCP GP") and Lightfoot Capital Partners, LP ("LCP LP", and together with LCP GP, "Lightfoot") announced today that they have entered into a Purchase Agreement and Plan of Merger (the "Merger Agreement") with Zenith Energy U.S., L.P. (together with its affiliates, "Zenith"), a portfolio company of Warburg Pincus, pursuant to which Zenith will acquire Arc Logistics GP LLC ("Arc GP"), the general partner of the Partnership (the "GP Transfer"), and all of the outstanding common units in Arc Logistics (the "Merger" and, together with the GP Transfer, the "Proposed Transaction"). Under the terms of the Merger Agreement, all Arc Logistics common unitholders, other than Lightfoot, will receive $16.50 per common unit in cash for each common unit they own, which represents a premium of approximately 15% to the Partnership's common unit price as of August 28, 2017. LCP LP will receive $14.50 per common unit in cash for the approximately 5.2 million common units held by it, and LCP GP will receive $94.5 million for 100% of the membership interests in Arc GP.
>
> In connection with the Proposed Transaction, the Board of Directors of Arc GP (the "Arc Board") formed a conflicts committee (the "Conflicts Committee") composed of independent directors of the Arc Board to review, evaluate and negotiate the Merger. The Conflicts Committee approved the Merger Agreement and the Merger, determined that the Merger Agreement and the Merger are fair and reasonable to and in the best interests of the Partnership and the holders of common units (other than Lightfoot and its controlling affiliates) and recommended that the Arc Board and holders of common units approve the Merger Agreement and the Merger. Following recommendation and approval from the Conflicts Committee, the Arc Board unanimously approved the Merger Agreement and the Merger and is recommending that all Arc Logistics common unitholders vote in favor of the Merger Agreement and the Merger.
>
> The completion of the Proposed Transaction is subject to a number of closing conditions, including approval by a majority of the outstanding Arc Logistics common unitholders and the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended. Lightfoot, the owner of Arc GP and approximately 26.8% of the outstanding common units, has executed an agreement to vote in support of the Proposed Transaction.

> Additionally, the Proposed Transaction is subject to (i) the closing of the purchase by Zenith and Lightfoot from EFS Midstream Holdings LLC of certain of the interests in Arc Terminals Joliet Holdings LLC, which indirectly owns among other things a crude oil unloading facility and a 4-mile crude oil pipeline in Joliet, Illinois, and (ii) the closing of the purchase by Zenith of a 5.5% interest (and, subject to certain conditions, an additional 4.2% interest) in Gulf LNG Holdings Group, LLC, which owns a liquefied natural gas regasification and storage facility in Pascagoula, Mississippi, from Lightfoot. The Proposed Transaction is not subject to a financing condition and closing is targeted at the end of the fourth quarter of 2017 or early in the first quarter of 2018.

**The Proxy Misleads MLP Unitholders by Omitting Material Information**

26.     On September 26, 2017, MLP filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince unitholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's expected future value as a standalone entity as evidenced by the Company's financial projections, the financial analysis underlying the fairness opinion provided by Tudor Pickering Holt & Co. Advisors LP ("TPH"), and the process ultimately leading to the Merger Agreement.

*Material Omissions Concerning the Company's Financial Projections*

27.     First, the Proxy discloses non-GAAP accounting metrics for projected financial information over the years 2017-2020: Adjusted EBITDA, Distributable Cash Flow, and Unlevered Free Cash Flow.  However, providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

28.     The Proxy fails to disclose the line items underlying EBITDA necessary to reconcile EBITDA to GAAP measures, including (i) operating earnings; (ii) stock-based compensation expense; (iii) interest; (iv) taxes; and (v) depreciation and amortization.

29. The Proxy fails to disclose the line items underlying unlevered free cash flow necessary to reconcile unlevered free cash flow to EBITDA, including (i) acquisition costs and (ii) development costs.

30. The Proxy also fails to disclose the definitions of distributable cash flow and unlevered free cash flow necessary for the reconciliation and understanding of both measures by the unitholders of MLP.

31. The Proxy must disclose the necessary line items to reconcile these non-GAAP measures to well-understood GAAP financial metrics. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

32. Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

33. On May 17, 2016, the SEC's Division of Corporation Finance released updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures. One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts. S.E.C. Comp. & Disc. Interps., Question 102.07 (May 17, 2016) https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm. The Proxy makes no effort to account for the failure to reconcile these non-GAAP measures to GAAP metrics.

34. Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads MLP unitholders

35. These projections were provided to TPH, and used by TPH, for the purpose of creating a fairness opinion that could then be used in soliciting unitholder approval of the Proposed Transaction. Because these analyses were presented to the MLP unitholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same unitholders as to the accuracy and value of the analyses.

### *Material Omissions Concerning TPH's Financial Analyses*

36. The Proxy describes TPH's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of TPH's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, MLP's public unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on TPH's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to MLP's unitholders.

37. With respect to TPH's *Trading Comparables Analyses* for MLP, the Proxy fails to disclose the individual multiples for each of the selected public companies analyzed by TPH, as well as the financial performance metrics for each selected company. Without such information, MLP's unitholders are unable to determine how the multiples used in determining MLP's value compare to the other companies. As a result, unitholders are unable to assess whether TPH utilized unreasonably low multiples thereby skewing the analysis and rendering the implied share price ranges set forth in the analyses misleading.

38. With respect to TPH's *Corporate Transactions Analyses*, the Proxy fails to disclose the individual multiples for each of the selected transactions analyzed by TPH, as well as any benchmarking analyses TPH performed for MLP in relation to the target companies. Without such

information, MLP's unitholders are unable to determine how the multiples used in determining MLP's value compare to the other companies. As a result, unitholders are unable to assess whether MLP utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

### *Material Omissions Concerning Confidentiality Agreements*

39. MLP entered into confidentiality agreements with several companies in 2015 and 2016, including agreements with Company A in November 2015, Company B in June 216, and Company C in October 2016.

40. The Proxy discloses that MLP also entered into an exclusivity agreement and standstill agreement with Company B on December 28, 2016.

41. However, the Proxy fails to disclose whether the confidentiality agreements with Company A and Company C contained standstill provisions that currently prevent Company A and Company C from submitting superior offers to acquire MLP. The Proxy also omits the expiration of the standstill agreement entered into with Company B, noting only that the exclusivity agreement would last until January 20, 2017.

42. Furthermore, the Proxy materially misleads MLP unitholders by omitting whether this standstill agreement with Company B contains a don't-ask-don't-waive provision that would prevent Company B from coming forward with a superior offer to the Proposed Transaction, even in a private overture to the MLP board.

43. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company unitholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and MLP**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. MLP is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to unitholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's unitholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of MLP within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of MLP and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: October 3, 2017                                    Respectfully submitted,

                                                          **LEVI & KORSINSKY LLP**

                                                             */s/ Jonathan Lindenfeld*   .
                                                          Jonathan Lindenfeld (JL-1990)
                                                          30 Broad Street, 24th Floor
                                                          New York, NY 10004
                                                          Tel: (212) 363-7500
                                                          Fax: (212) 363-7171
                                                          Email: jlindenfeld@zlk.com

                                                          *Attorney for Plaintiff*

**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
      etripodi@zlk.com

*Attorneys for Plaintiff*